## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| VLADIMIR GUSINSKY REVOCABLE TRUST, Derivatively on behalf of BEAZER HOMES USA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH S. ACTON, LAURENT ALPERT, BRIAN C. BEAZER, PETER G. LEEMPUTTE, ALLAN P. MERRILL, PETER M. ORSER, NORMA A. PROVENCIO, ROBERT L. SALOMON, DANNY R. SHEPHERD, and STEPHEN P. ZELNAK, JR.,<br><br>Defendants,<br><br>-and-<br><br>BEAZER HOMES USA, INC.,<br><br>Nominal Defendant. | Civil Action No.<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br><br><br>JURY TRIAL DEMANDED |

Plaintiff Vladimir Gusinsky Revocable Trust ("Plaintiff"), by and through its undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of Beazer Homes USA, Inc. ("Beazer Homes" or the "Company") against certain members of its Board of Directors (the "Board") and executive officers seeking to remedy Defendants' breaches of

fiduciary duties and unjust enrichment from August 1, 2014 to the present (the "Relevant Period"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon information and belief based on the investigation of undersigned counsel, which includes, without limitation: (a) review and analysis of public filings made by Beazer Homes and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Beazer Homes, Defendants (defined herein), and other related non-parties; (c) review of news articles, stockholder communications, and postings on Beazer Homes' website concerning the Company's public statements; (d) review of the pleadings in the federal securities class action captioned *Strougo v. Beazer Homes USA Inc. et al.*, Case No. 19-cv-05301 pending in the U.S. District Court for the Southern District of New York (the "Securities Class Action"); and (e) review of other publicly available information concerning Beazer Homes and Defendants.

## NATURE OF THE ACTION

1.   Throughout the Relevant Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading

- 2 -

statements and/or failed to disclose that: (i) Beazer Homes' California assets classified as land held for future development were deteriorating in value or improperly valued; (ii) the foregoing created a foreseeable risk of an eventual substantial impairment that would negatively impact the profitability of the Company; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

2.     According to its public filings, Beazer Homes designs, constructs, and sells single-family and multi-family homes for entry-level, move-up, or retirement-oriented home buyers under the Beazer Homes, Gatherings, and Choice Plans names. The Company sells its homes through commissioned new home sales counselors and independent brokers in Arizona, California, Nevada, Texas, Delaware, Indiana, Maryland, Tennessee, Virginia, Florida, Georgia, North Carolina, and South Carolina.

3.     Beazer Homes was founded in 1985 and is headquartered in Atlanta, Georgia.  The Company operates as a homebuilder in the United States.

4.     Defendants allowed the Company to issue reports and issue statements on the Company's behalf about the valuation of the Company's land held for future development continuously throughout the Relevant Period.

5. Throughout the Relevant Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Beazer Homes' California assets classified as land held for future development were deteriorating in value or improperly valuated; (ii) the foregoing created a foreseeable risk of an eventual substantial impairment that would negatively impact the profitability of the Company; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

6. The truth began to emerge on May 2, 2019, when Beazer Homes issued a press release announcing its financial and operating results for the second quarter of 2019 (the "May 2019 Press Release"). Among other issues, Beazer Homes announced a net loss from continuing operations of $100.8 million for the quarter, reflecting a $147.6 million impairment on certain California assets the Company had acquired before 2007. According to Defendants, all of the assets at issue were either currently or previously classified as land held for future development.

7. On this news, the Company's stock price fell $1.73 per share, or 12.15%, to close at $12.51 per share on May 3, 2019.

8.     On June 5, 2019, as a result of the decline in market value of the Company's securities, as alleged herein, the Securities Class Action lawsuit was initiated in the Southern District of New York.

9.     As a result of the Defendants' wrongful acts and omissions, and the decline in market value of the Company's securities, as alleged herein, the Company has been damaged, and Plaintiff now files this Complaint.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this action states a federal question.   Plaintiff has asserted a federal claim of contribution derivatively on behalf of the Company, arising under Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4.  Pursuant to federal statutory law, this Court has original federal question jurisdiction over the federal contribution claim.

11.     This Court also has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

12.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains

operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14.    Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because (i) Beazer Homes maintains its principal executive offices in this District; (ii) one or more of Defendants either reside in or maintain executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

15.    In connection with the acts and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and the facilities of the national securities exchanges and markets.

## THE PARTIES

16.    Plaintiff is a current shareholder of Beazer Homes and has continuously held Beazer Homes stock since June 2004.

17.    Defendant Allan P. Merrill ("Merrill") serves as Beazer Homes'

President and Chief Executive Officer ("CEO").  From 2007 to 2011, Merrill served as the Executive Vice President and Chief Financial Officer ("CFO").  In 2011, he was named CEO and President of the Company.  Merrill is a named defendant in the Securities Class Action.

18.    Defendant Robert L. Salomon ("Salomon") has served as Beazer Homes' Executive Vice President, CFO, and Chief Accounting Officer ("CAO") since 2008.  Salomon is a named defendant in the Securities Class Action.

19.    Defendant Stephen P. Zelnak Jr. ("Zelnak") has served on the Board since 2003.  Zelnak has been the non-executive Chairman of the Board since 2015.  Zelnak serves on the Company's Audit Committee.

20.    Defendant Elizabeth S. Acton ("Acton") has served on the Board since 2012.  Acton serves on the Company's Audit Committee.

21.    Defendant Laurent Alpert ("Alpert") has served on the Board since 2002.

22.    Defendant Brian C. Beazer ("Beazer") has served on the Board since the Company's IPO in 1994 when he founded the Company.  Beazer served as the Company's non-executive Chairman of the Board from 1994 to 2015.

23.    Defendant Peter G. Leemputte ("Leemputte") has served on the Board since 2005.  Leemputte serves on the Company's Audit Committee.

24.    Defendant Peter M. Orser ("Orser") has served on the Board since 2016.

25.    Defendant Norma A. Provencio ("Provencio") has served on the Board since 2009.

26.    Defendant Danny R. Shepherd ("Shepherd") has served on the Board since 2016.   Shepherd serves as the Chairperson for the Company's Audit Committee.

27.    Collectively, Defendants Merrill, Salomon, Zelnak, Acton, Alpert, Beazer, Leemputte, Orser, Provencio, and Shepherd shall be referred to herein as "Defendants."

28.    Collectively, Defendants Zelnak, Acton, Leemputte, and Shepherd shall be referred to herein as the "Audit Committee Defendants".

29.    Collectively, Defendants Merrill and Salomon shall be referred to herein as the "Securities Class Action Defendants."

## DEFENDANTS' DUTIES

30.    By reason of their positions as officers, directors, and/or fiduciaries of Beazer Homes, and because of their ability to control the business and corporate affairs of Beazer Homes, Defendants owed Beazer Homes and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required

to use their utmost ability to control and manage Beazer Homes in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of Beazer Homes and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Beazer Homes and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

31. Defendants, because of their positions of control and authority as directors and/or officers of Beazer Homes, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Beazer Homes, each of the Defendants had knowledge of material non-public information regarding the Company.

32. To discharge their duties, the officers and directors of Beazer Homes were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of Beazer Homes were required to, among other things:

(a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b) Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations, and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

(c) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

33.    Specifically, the Audit Committee is charged with the duties of, *inter alia*:

The Audit Committee reviews the Company's internal accounting and audit processes and the work of the Company's independent auditors. . . . The Audit Committee also oversees the Company's risk assessment, risk management processes, compliance processes as well as certain related party transactions and other matters that may involve conflicts of interest.

34.    Additionally, Beazer Homes has established a "Code of Business Conduct and Ethics," which states, *inter alia*:

**2.0    DUTY TO DISCLOSE AND REPORT**

In addition to a duty to adhere to the Code and disclose any personal violations, Employees and Directors also have an obligation to report known or suspected violations of the Code, including situations in which the Company could be implicated as a result of unlawful conduct. If an Employee or Director knows or suspects a violation of the Code, that person must report the situation to the

Company's General Counsel or Compliance Officer or, alternatively, to the Company's Ethics Hotline by calling: 1-866-457-9346

A report also may be submitted by completing a form via the website address below ("Online Form"), which address can also be found on the Company's Internet: https://www.integrity-helpline.com/Beazer.jsp

Both the Ethics Hotline and Online Forms are operated by an independent third-party company. No report submitted through the Ethics Hotline or an Online Form that addresses conduct or actions of a specific individual will be delivered to that individual.

If you choose, you may report any concerns on an anonymous basis via the Ethics Hotline or an Online Form. For Employees submitting reports by any other means and wishing to remain anonymous, reasonable steps will be taken to ensure that the identity of the reporting Employee is kept confidential.

The Company is committed to providing an open and honest environment, and any reports, whether made to an individual, to the Ethics Hotline, through an Online Form or otherwise, will be handled in a fair and respectful manner. Reports will be shared only with appropriate personnel, including the Company's Compliance Officer. To protect the rights of each Employee, no attempt to discipline or retaliate against any Employee for reporting in good faith known or suspected violations of the Code, Laws and Regulations or Company policies will be permitted or tolerated. If you believe you have been subject to harassment or retaliation, you should contact the Company's General Counsel, the Company's Head of Human Resources, a representative of the Human Resources Department or the Company's Compliance Officer.

Additionally, stockholders and other interested parties wishing to communicate directly with the Non-Executive Chairman of the Board or non-management Directors as a group may do so by addressing their communications to the Ethics Hotline and specifically referencing them as communications for the Non-Executive Chairman or non-management Directors.

- 11 -

The names and phone numbers for the individuals to whom known or suspected violations of the Code may be reported, as well as information related to the Ethics Hotline and Online Forms, can be found in the Guidelines.

## 2.1    Investigations

All reports of known or suspected violations will be taken seriously, and, if warranted, investigated in compliance with all relevant Laws and Regulations.

## 2.2    Consequences

If it is determined that there have been violations of the Code, including unlawful conduct, a designated person shall determine the appropriate actions to be taken. Such actions shall be reasonably designed to deter wrongdoing and to promote accountability for adherence to the Code, and may include but are not limited to, disciplinary action, up to and including termination or in the case of a Director, removal from the Board. In determining what action is appropriate in a particular circumstance, the designated person(s) will consider all relevant information, including, for example, the nature and severity of the violation, whether the violation was a single occurrence or repeated occurrences, whether the violation appears to have been intentional or inadvertent, whether the Employee(s) in question had been advised prior to the violation as to the proper course of action and whether the Employee(s) in question had committed other violations in the past.

## 3.0    COMPLIANCE WITH ALL LAWS, RULES AND REGULATIONS

The Company is committed to ensuring compliance with all applicable federal, state and local laws and with all applicable rules and regulations set forth by governmental authorities, stock exchanges on which the Company's shares are listed and any other regulatory bodies (collectively "Laws and Regulations"). Employees and Directors must strive to comply at all times with all Laws and

Regulations in connection with their service as Employees and/or Directors of the Company.

If it is unclear whether an action being considered would violate applicable Laws and Regulations, you should seek advance guidance from the Company's General Counsel or Compliance Officer.

Violations of applicable Laws and Regulations may subject Employees to disciplinary action, up to and including termination or removal from the Board (in the case of a Director).

\* \* \*

## 6.0   ACCOUNTING PRACTICES AND INTEGRITY OF RECORDS

The accuracy and reliability of the Company's financial and business records is of utmost importance to the decisions the Company makes and to the Company's compliance with its financial, legal and reporting obligations. It is the policy of the Company to fully and fairly disclose the financial condition of the Company in compliance with all applicable accounting principles, and Laws and Regulations. All business records, expense accounts, vouchers, bills, payrolls, service records, reports to government agencies and other such reports must accurately reflect the facts they represent.

It is the Company's policy to make full, fair, accurate, timely and understandable disclosures in all periodic reports required to be filed by the Company with the Securities and Exchange Commission, as required by applicable Laws and Regulations. All books and records of the Company shall be kept in such a way as to fully and fairly reflect all Company transactions in accordance with the Generally Accepted Accounting Principles of the United States of America ("GAAP"). False and misleading entries in such records are unlawful and are not permitted, and no undisclosed or unrecorded funds or assets shall be established for any purpose.

The Company maintains a system of internal controls as provided for by all applicable Laws and Regulations. A detailed

description of the Company's internal control policies and procedures can be found on the Company's Intranet, and you must report any deficiencies that could adversely affect the Company's ability to record, process, summarize or report financial data in a full, fair and accurate manner.

The Company's public or certified public accountants shall be given access to all information necessary for them to conduct a proper audit. Employees must not take any action, nor may they direct any others to take any action, to fraudulently influence, coerce, manipulate or mislead any public or certified public accountant engaged in the audit or review of the Company's financial statements for any purpose, including for the purpose of rendering those financial statements misleading. Similarly, no Employee shall take any such action at the direction of any other Employee. Any such actions taken at the direction of another Employee will be deemed to have been made "for the purpose of" rendering the financial statements misleading if the Employee involved knew or was unreasonable in not knowing the improper influence, if successful, would result in rendering financial statements misleading.

The knowing or deliberate falsification of any documents may be the basis for immediate discharge and may subject an Employee to civil and/or criminal sanctions. As with any known or suspected violation of any provision of the Code, it is critical that you immediately report any known or suspected violations of this Section 6.0.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

35.    According to its public filings, Beazer Homes is a geographically diversified homebuilder with operations in 13 states across the United States.  The Company designs homes to appeal to homeowners at different price points across

various demographic segments, and generally offers those homes for sale in advance of their construction. The Company's goal is to provide their customers with homes that incorporate value and quality, at affordable prices, while seeking to maximize their return on invested capital over the course of the housing cycle.

36.    Beazer Homes was incorporated in Delaware in 1993.    The Company's executive offices are located in Atlanta, Georgia.

37.    Beazer Homes designs, constructs, and sells single-family and multi-family homes for entry-level, move-up, or retirement-oriented home buyers under the Beazer Homes, Gatherings, and Choice Plans names. The Company sells its homes through commissioned new home sales counselors and independent brokers in Arizona, California, Nevada, Texas, Delaware, Indiana, Maryland, Tennessee, Virginia, Florida, Georgia, North Carolina, and South Carolina.

38.    Beazer Homes' homebuilding operations are divided into three reportable segments; West, East, and Southeast. The "West" segment is comprised of the states of Arizona, California, Nevada, and Texas.

**B.    Defendants' False and Misleading Statements**

39.    On July 31, 2014, post-market, Beazer Homes filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended June 30, 2014 (the "3Q 2014 10-

Q"). For the quarter, Defendants reported a total value of $309.516 million in land held for future development, $262.481 million of which was attributable to Beazer Homes' West Segment.

40. With regard to Beazer Homes' valuation of its land held for future development, the 3Q 2014 10-Q stated, in relevant part:

> **Inventory Valuation.** We assess our inventory assets no less than quarterly for recoverability . . . . For those communities for which construction and development activities are expected to occur in the future or have been idled (land held for future development), all applicable interest and real estate taxes are expensed as incurred and the inventory is stated at cost unless facts and circumstances indicate that the carrying value of the assets may not be recoverable. We record assets held for sale at the lower of the carrying value or fair value less costs to sell.
>
> * * *
>
> During the nine months ended June 30, 2014, we began development on a large project in California that was previously included in land held for future development.

41. On November 13, 2014, Beazer Homes filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended September 30, 2014 (the "2014 10-K"). For 2014, Defendants reported a total value of $301.048 million in land held for future development, $260.898 million of which was attributable to Beazer Homes' West Segment.

42.   With regard to Beazer Homes' valuation of its land held for future development, the 2014 10-K stated, in relevant part:

### *Asset Valuation - Land Held for Future Development*

For those communities for which construction and development activities are expected to occur in the future or have been idled (land held for future development), all applicable interest and real estate taxes are expensed as incurred and the inventory is stated at cost unless facts and circumstances indicate that the carrying value of the assets may not be recoverable. The future enactment of a development plan or the occurrence of events and circumstances may indicate that the carrying amount of an asset may not be recoverable. We evaluate the potential development plans of each community in land held for future development if changes in facts and circumstances occur which would give rise to a more detailed analysis for a change in the status of a community to active status or held for development.

(Emphasis in original.)

43.   The 2014 10-K also contained representations concerning the risk that market factors, macro-economic factors, and other factors outside Defendants' control could negatively impact the Company's financial and operating results. Specifically, the 2014 10-K stated, in relevant part:

### *The market value of our land and/or homes may decline, leading to impairments and reduced profitability.*

We regularly acquire land for replacement and expansion of land inventory within our existing and new markets. The market value of land, building lots and housing inventories can fluctuate significantly as a result of changing market conditions and the measures we employ to manage inventory risk may not be adequate to insulate our operations from a severe drop in inventory values. When market

conditions are such that land values are not appreciating, previously entered into option agreements may become less desirable, at which time we may elect to forgo deposits and preacquisition costs and terminate the agreements. In a situation of adverse market conditions, we may incur impairment charges or have to sell land at a loss which would adversely affect our financial condition, results of operations and stockholders' equity and our ability to comply with certain covenants in our debt instruments linked to tangible net worth.

***Our home sales and operating revenues could decline due to macro-economic and other factors outside of our control, such as changes in consumer confidence, declines in employment levels and increases in the quantity and decreases in the price of new homes and resale homes in the market.***

Changes in national and regional economic conditions, as well as local economic conditions where we conduct our operations and where prospective purchasers of our homes live, may result in more caution on the part of homebuyers and, consequently, fewer home purchases. These economic uncertainties involve, among other things, conditions of supply and demand in local markets and changes in consumer confidence and income, employment levels and government regulations. These risks and uncertainties could periodically have an adverse effect on consumer demand and the pricing of our homes, which could cause our operating revenues to decline. Additional reductions in our revenues could, in turn, further negatively affect the market price of our securities.

***The homebuilding industry is cyclical. A severe downturn in the industry, as recently experienced, could adversely affect our business, results of operations and stockholders' equity.***

During periods of downturn in the industry, housing markets across the United States may experience an oversupply of both new and resale home inventory, an increase in foreclosures, reduced levels of consumer demand for new homes, increased cancellation rates, aggressive price competition among homebuilders and increased incentives for home sales. In the event of a downturn, we may temporarily experience a material reduction in revenues and margins.

> Continued weakness in the homebuilding market could adversely affect our business, results of operations and stockholders' equity as compared to prior periods and could result in additional inventory impairments in the future.

(Emphasis in original.)

44.    On November 10, 2015, Beazer Homes filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended September 30, 2015 (the "2015 10-K"). For 2015, Defendants reported a total value of $270.990 million in land held for future development, $230.778 million of which was attributable to Beazer Homes' West Segment.  Of the West Segment's total 3,813 lots held for future development, 2,602 were attributable to California.

45.    The 2015 10-K contained substantively the same statements as those quoted above regarding Beazer Homes' valuation of its land held for future development.

46.    Additionally, the 2015 10-K contained substantively the same representations as above concerning the risk that market factors, macro-economic factors, and other factors outside Defendants' control could negatively impact the Company's financial and operating results.

47.    On November 15, 2016, Beazer Homes filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results

for the fiscal year ended September 30, 2016 (the "2016 10-K").  For 2016, Defendants reported a total value of $213.006 million in land held for future development, $172.015 million of which was attributable to Beazer Homes' West Segment.  Of the West Segment's total 2,795 lots held for future development, 2,136 were attributable to California.

48.    The 2016 10-K noted that gross margins were negatively impacted, in part, by Defendants' "activation of assets formerly classified as land held for future development, which generally have lower margins[.]"  According to the 2016 10-K, Defendants "continued to activate certain parcels of land held for future development so that these assets can begin to generate revenue for the Company."

49.    The 2016 10-K also contained substantively the same statements as those quoted above regarding Beazer Homes' valuation of its land held for future development.

50.    Additionally, the 2016 10-K contained substantively the same representations as above concerning the risk that market factors, macro-economic factors, and other factors outside Defendants' control could negatively impact the Company's financial and operating results.

51.    On November 14, 2017, Beazer Homes filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results

for the fiscal year ended September 30, 2017 (the "2017 10-K"). For 2017, Defendants reported a total value of $112.565 million in land held for future development, $87.231 million of which was attributable to Beazer Homes' West Segment. Of the West Segment's total 1,100 lots held for future development, 828 were attributable to California.

52. The 2017 10-K again noted that gross margins were negatively impacted, in part, by Defendants' "activation of assets formerly classified as land held for future development, which generally have lower margins[.]" According to the 2017 10-K, Defendants were employing a "number of strategies to improve capital efficiency," including the "activation of previously land held for future development communities." The 2017 10-K also touted that "[d]uring the current fiscal year, [the Company's] land held for future development balance ha[d] declined by approximately $100 million" because Defendants had "activated multiple parcels for homebuilding activities."

53. The 2017 10-K also contained substantively the same statements as those quoted above regarding Beazer Homes' valuation of its land held for future development.

54. Additionally, the 2017 10-K contained substantively the same representations as above concerning the risk that market factors, macro-economic

factors, and other factors outside Defendants' control could negatively impact the Company's financial and operating results.

55.    On November 13, 2018, Beazer Homes filed its Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the fiscal year ended September 30, 2018 (the "2018 10-K"). For 2018, Defendants reported a total value of $83.173 million in land held for future development, $58.125 million of which was attributable to Beazer Homes' West Segment.  Of the West Segment's total 817 lots held for future development, 578 were attributable to California.

56.    Under the 2018 10-K's "Long-Term Business Strategy" section, Defendants added a new item, touting that "[t]o improve [Beazer Homes'] return on assets, [the Company] expect[s] to benefit from [*inter alia*] the activation of a number of assets that were previously classified as land held for future development[.]"  The 2018 10-K also touted how "[d]uring the current fiscal year, [the Company's] land held for future development balance declined by approximately $29.4 million due to the activation of multiple parcels for homebuilding activities, leaving a remaining balance of $83.2 million as of September 30, 2018."  Nonetheless, the 2018 10-K noted that, going forward, Beazer Homes' gross margins would continue to be negatively impacted by

Defendants' "activation of land assets formerly classified as land held for future development, which generally have lower margins[.]"

57.   The 2018 10-K also contained substantively the same statements as those quoted above regarding Beazer Homes' valuation of its land held for future development.

58.   Additionally, the 2018 10-K contained substantively similar representations as above concerning the risk that market factors, macro-economic factors, and other factors outside the Defendants' control could negatively impact the Company's financial and operating results.

59.   On February 4, 2019, Beazer Homes filed its Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarterly period ended December 31, 2018 (the "1Q 2019 10-Q").  For the quarter, Defendants reported a total value of $83.177 million in land held for future development, $58.129 million of which was attributable to Beazer Homes' West Segment.

60.   The 1Q 2019 10-Q also contained substantively the same statements as those quoted above regarding Beazer Homes' valuation of its land held for future development.

61.   As in Beazer Homes' prior Form 10-Ks, Defendants touted their

ongoing strategy of "activating" assets formerly classified as land held for future development to improve capital efficiency, while noting that these same efforts negatively impacted the Company's gross margins, and would continue to do so going forward.

62.    The statements referenced above were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Beazer Homes' California assets classified as land held for future development were deteriorating in value or improperly valuated; (ii) the foregoing created a foreseeable risk of an eventual substantial impairment that would negatively impact the profitability of the Company; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## C.    **The Truth Begins to Emerge**

63.    On May 2, 2019, Defendants caused Beazer Homes to issue a press release announcing its financial and operating results for the second quarter of 2019.  Among other issues, Beazer Homes announced a net loss from continuing operations of $100.8 million for the quarter, reflecting a $147.6 million impairment

- 24 -

on certain California assets the Company acquired before 2007. According to Defendants, all of the assets at issue were either currently or previously classified as land held for future development. Specifically, Defendant Merrill, as quoted in the May 2019 Press Release, stated, in relevant part:

> During the quarter, we also took impairments on several of our California assets. In response to recent changes in market conditions, we concluded that it had become necessary to reduce prices in some of our active communities, all of which were previously classified as land held for future development. Additionally, after a thorough review of our California assets, we made a strategic decision to sell or activate all of the remaining assets which were still classified as land held for future development. Although these decisions led to an impairment this quarter, our actions will enable us to increase our sales pace, generate cash more quickly and redeploy this capital to more attractive investments.

> \* \* \*

> *Impairments.* Of the total impairments during the quarter, $109.0 million related to 9 formerly land held for future development communities that are currently generating sales or are under development in Southern California and reflected the deterioration in conditions that occurred in their respective markets. Concurrently, the Company performed a strategic review of its remaining land held for future development assets in California and now plans to sell all of these parcels. As a result, land held for sale impairment charges totaling $38.6 million were recognized on 6 of these communities. The Company no longer has any land held for future development assets in California.

64. Later that day, on a conference call with analysts and investors to discuss Beazer Homes' second quarter earnings, Defendant Merrill provided

additional information concerning the impairments caused by California assets classified as land held for future development, stating, in relevant part:

> Of course, the other big news in the second quarter was the impairments on certain California assets. These non-cash impairments totaled $148 million on a pre-tax basis and $107 million on an after-tax basis.
>
> The impairments related to 15 assets, all of which were currently or previously classified as land held for future development. 14 of these assets were acquired before 2007. The impairments occurred in two categories. The first related to nine projects that are under development or/are actively selling. Assets that fell into this category contributed $109 million of the pre-tax impairment and were spread across Southern California. The second category related to six communities that we have decided to sell that were still classified as land held for future development. The pre-tax impairment related to these assets was $39 million, split between Northern and Southern California.
>
> After these adjustments, we have no remaining land held for future development in California.

65.     Analysts expressed concern regarding the timing of the impairments, given that the California assets had been on Beazer Homes' books for more than eleven years.  During the earnings call, an analyst questioned the timing of the impairments, and received an evasive answer from David Goldberg, Vice President and Treasurer of Beazer Homes:

> Alan S. Ratner, Zelman & Associates LLC: So on the impaired projects, sounds like they've been on the books for a while, have they been previously impaired during the downturn?  Or was this the first charge that you took on them?

David Goldberg, Vice President and Treasurer: I would be a little reluctant to answer it definitively. One or more of them may have had an impairment, but they have not been impaired since 2007 or 2008 because once they went into the land held category, where the assessment was that they could be recovered, they were annually tested for impairment in the same way. So it's reasonably fair to assume they were largely untouched.

66.    On this news Beazer Homes' stock price fell $1.73 per share, or *12.15%,* to close at $12.51 per share on May 3, 2019.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

67.    Plaintiff brings this action derivatively in the right and for the benefit of Beazer Homes to redress the breaches of fiduciary duty and other violations of law by Defendants.

68.    Plaintiff will adequately and fairly represent the interests of Beazer Homes and its shareholders in enforcing and prosecuting its rights.

69.    Plaintiff was a shareholder of Beazer Homes common stock at the time of the wrongdoing of which Plaintiff complains, and has been continuously since.

70.    The Beazer Homes Board has nine members: Defendants Zelnak, Acton, Alpert, Beazer, Leemputte, Orser, Provencio, Shepherd, and Merrill.  A pre-suit demand on the Board is excused in this case because a majority of its members are disabled from fairly, independently, and objectively considering any

pre-suit demand.

71.    As Beazer Homes' directors and top officers, Defendants owed Beazer Homes and its shareholders fiduciary duties of loyalty, candor, and good faith.  Rather than speak the entire truth when they said, or caused anything to be said, about the Company, Defendants breached their fiduciary duties by disseminating false and misleading statements about Beazer Homes' California future development land.  Therefore, because Defendants are interested in the outcome of this litigation, a majority of the Beazer Homes' Board cannot fairly nor objectively consider a pre-suit demand.  As such, a pre-suit demand on the Board is futile and excused.

72.    The principal professional occupation of Defendant Merrill is as CEO of Beazer Homes pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.  Moreover, the Company's December 21, 2018 Proxy Statement filed with the SEC states that Defendant Merrill is not independent.

73.    Defendants Zelnak, Acton, Leemputte, and Shepherd served on the Audit Committee of the Board, the body principally responsible for oversight of the Company's annual and quarterly filings on SEC forms 10-K and 10-Q and earnings press releases on SEC Forms 8-K.  In this capacity, the Audit Committee

Defendants approved Beazer Homes' 2014 through 2018 Form 10-K filings and quarterly earnings press releases.  Despite knowledge of the true facts about the Company's flawed reporting methods of the California future development land, the Audit Committee Defendants caused or permitted the dissemination of the false and/or misleading statements alleged herein to Beazer Homes' shareholders.  As a result, the Audit Committee Defendants are liable for breaching their fiduciary duties of loyalty.  Because the Audit Committee Defendants are interested in the outcome of this litigation, a pre-suit demand on them would be futile and is excused.

## COUNT I

### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION

74.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

75.    As alleged in detail herein, each of the Defendants had a duty to ensure that Beazer Homes disseminated accurate, truthful, and complete information to its shareholders.

76.    Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Beazer Homes shareholders materially misleading and inaccurate information through, *inter alia*,

SEC filings and other public statements and disclosures as detailed herein. These actions could not have been a good faith exercise of prudent business judgment.

77.    As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II

### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO MAINTAIN INTERNAL CONTROLS

78.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

79.    As alleged herein, each of the Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

80.    Defendants willfully ignored the obvious and pervasive problems with Beazer Homes' internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

81.    As a direct and proximate result of the Defendants' foregoing

breaches of fiduciary duties, the Company has sustained damages.

## COUNT III

### AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

82.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

83.    By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Beazer Homes.

84.    Plaintiff, as a shareholder and representative of Beazer Homes, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## COUNT IV

### DERIVATIVELY FOR CONTRIBUTION UNDER SECTIONS 10(B) AND 21D OF THE EXCHANGE ACT AGAINST THE SECURITIES CLASS ACTION DEFENDANTS

85.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

86.    This claim is brought derivatively on behalf of the Company for contribution and indemnification against the Securities Class Action Defendants, each of whom is a named defendant in the Securities Class Action.

87.   Beazer Homes is named as a defendant in the Securities Class Action, asserting claims under the federal securities laws for, *inter alia*, violations of Sections 10(b), 20(a) of the Exchange Act.  If Beazer Homes is ultimately found liable for violating the federal securities laws, the Company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omission of some or all of the Securities Class Action Defendants as alleged herein.  The Company is entitled to receive contribution from those Defendants in connection with the Securities Class Action against the Company.

88.   As directors and officers of Beazer Homes, the Securities Class Action Defendants had the power and/or ability to, and did, directly or indirectly control or influence the Company's business operations and financial affairs, including the content of public statements about Beazer Homes, and had the power and/or ability directly or indirectly to control or influence the specific corporate statements and conduct that violated section 10(b) of the Exchange Act and SEC Rule 10b-5 as alleged above.

89.   The Securities Class Action Defendants are also liable under 15 U.S.C. § 78j(b), pursuant to which there is a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4, which governs the application of any private right of action for contribution asserted

pursuant to the Exchange Act.

90.     Accordingly, Beazer Homes is entitled to all appropriate contribution or indemnification from the Securities Class Action Defendants, who are responsible for exposing Beazer Homes to liability under the federal securities laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing Beazer Homes to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- 33 -

C.      Awarding to Beazer Homes restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Defendants;

D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 25, 2019                    **JOHNSON FISTEL, LLP**

By: _____*s/ Michael I. Fistel*_____
MICHAEL I. FISTEL, JR.
(Ga. Bar No. 262062)

William W. Stone (Ga. Bar No. 273907)
Adam Sunstrom (Ga. Bar No. 556579)
Murray House
40 Powder Springs Street
Marietta, GA 30064
Telephone:  (470) 632-6000
Facsimile:  (770) 200-3101
michaelf@johnsonfistel.com
williams@johnsonfistel.com
adams@johnsonfistel.com

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker
James M. Ficaro
22 Cassatt Avenue
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jmf@weiserlawfirm.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Dr., Ste. 300
Berwyn, PA 19312
Telephone:  (484) 324-6800
Facsimile:  (484) 631-1305
rmaniskas@rmclasslaw.com

*Counsel for Plaintiff*

## <u>VERIFICATION</u>

I, Vladimir Gusinsky, Trustee for the Vladimir Gusinsky Revocable Trust, under penalty of perjury, state as follows:

Vladimir Gusinsky Revocable Trust is the Plaintiff in the above-captioned action.  As its Trustee, I have read the foregoing Complaint and authorized its filing on behalf of Vladimir Gusinsky Revocable Trust.  Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: 6/18/19

Vladimir Gusinsky, Trustee for Vladimir
Gusinsky Revocable Trust